G. W. R. CHINN, Defendant in error, v. J. C. DAVIS, Plaintiff in error.

Kansas City Court of Appeals, April 5, 1886.

1. PRACTICE—VERDICT—NEW TRIAL—EVIDENCE.—A judgment will not be reversed at the instance of the party against whom it was rendered, on the ground that the verdict was for less than the amount shown by the evidence to be due, if any recovery at all was to be had. *Alderman v. Cox*, 74 Mo. 78.

2. PRACTICE—CONDUCT OF JURY—COMMUNICATION WITH JUDGE.—No communication whatever ought to take place between the judge and the jury, after the cause is committed to them by the charge of the judge, *unless in open court*, and, where practicable, in presence of counsel in the cause. *Sargent v. Robards*, 1 Pick. 337.

3. ———— SETTING ASIDE VERDICT—GROUNDS FOR.—Where the losing party shows that some private communication was made by the judge to the jury, it devolves upon the successful party to show what the communication was ; and unless he does this the verdict must be set aside. Where it clearly appears what the communication was ; if it be of such a character that it *may* have affected the jury, the verdict must be set aside. But if the court can see from the record that it *could not* have had any affect, the verdict should stand. 1 Hayne on New Trials, 133.

4. ———— DISMISSAL OF APPEAL—WRIT OF ERROR GRANTABLE WHEN.—When the appeal was dismissed, as in this case, for failure to comply with the rules of this court, and appellant sued out his writ of error, the fact of having taken the appeal does not preclude him from suing out writ of error. If the appeal is dismissed, or if *from any cause* the party loses the benefit of it, he may resort to his writ of error. *Brill v. Meek*, 20 Mo. 358.

ERROR to Platte Circuit Court, HON. G. W. DUNN, Judge.

*Reversed and remanded.*

The case is stated in the opinion.

ANDERSON & CARMACK and SAMUEL HARDWICKE, for plaintiff in error.

I. Defendant and plaintiff were partners. When

they dissolved defendant owed the firm $429.54, and admitted it in his answer to this suit. But he claimed it was cancelled in a settlement between them, while plaintiff claimed the *whole debt was due*. According to the testimony the *whole sum was due*, or *nothing* was due. Yet the verdict was for two hundred dollars for the plaintiff. There is no testimony to sustain this verdict and it should have been set aside. Hill on New Trials, 104.

II. The law does not tolerate the practice of communication between the jury and the judge of the court, except in open court, and in the presence of counsel. *State v. Alexander*, 66 Mo. 148.

III. Such a practice violates a substantial right, and a party moving for a new trial upon the ground of a communication between the judge and the jury, without his knowledge or assent, is not bound to show affirmatively that such communication tended to his injury. *Bank v. Mix*, 51 N. Y. 558; *Niel v. Abel*, 24 Wend. (N. Y.) 184; *Moody v. Pomeroy*, 4 Denio (N. Y) 115; *Chalmers v. Whitmore*, 22 Minn. 305; *Dent v. King*, 1 Georgia, 200; *Benson v. Clark*, 1 Cow. (N. Y.) 258.

WOODSON & WOODSON, for defendant in error.

I. The motion for new trial does not show that the juror was talking to the judge about this case. There is no law in civil cases requiring the jury to be kept to themselves, after the case has been submitted to them, as in criminal cases.

II. The law of this state is, that when a judgment of a lower court is being revised by an appellate court, every presumption is made in favor of the judgment. It is presumed that the lower court would not do or say anything to the jury, which was prejudicial or detrimental either to plaintiff or defendant. It devolves on the other party to show affirmatively in what the wrong or injustice complained of consists. In such case it must be presumed that the court below would have acted honestly and granted a new trial.

III. The verdict and judgment were clearly for the right party. The weight of the evidence was in favor of the plaintiff, and it is strongly confirmed by concurring circumstances.

IV. This case was first appealed, and was dismissed for not complying with the rules of this court. Then they sued out a writ of error. Can a person appeal, and let it go by default, and then sue out a writ of error? We think not. Either may be done, but not both, and when they have elected to appeal they must stand by their election.

V. There has never been service of brief.

PHILIPS, P. J.—I. This is an action to recover the sum of $429.54, alleged to be due the plaintiff from the defendant. The defendant claimed that this debt was included in the transfer of a partnership interest by him to plaintiff, and was settled thereby. This was denied by the plaintiff. The whole issue was one of fact. If the said debt was included in said transfer the defendant owed the plaintiff nothing. If it was not so included he owed the plaintiff the said sum of $429.54. There was evidence at the trial, had before a jury, tending to support both propositions. The jury, however, returned a verdict in favor of the plaintiff for the sum of two hundred dollars.

The defendant prosecutes this writ of error, and insists that the trial court should have awarded him a new trial because the verdict was contrary to the evidence—that if the plaintiff was entitled to recover one dollar he was entitled to the entire sum sued for.

We must hold this objection not well taken on the authority of the case of *Alderman v. Cox*, 74 Mo. 78.

II. A more serious question arises on the assignment of error predicated of the conduct of the trial judge and the foreman of the jury. It appears from the bill of exceptions that after the conclusion of the trial and the retirement of the jury to consider of their verdict, the

foreman left his fellows in the jury room, and without leave of court first had, or the assent of counsel, approached the judge on the bench, and held conversation with him in whisper, which was inaudible to the counsel for defendant, but from which it seemed as if the juror were propounding questions to the judge and the judge making answers thereto. At the conclusion of which interview the juror rejoined the jury, and thereafter the jury returned into court the verdict above stated.

These facts were brought to the attention of the court in the motion for a new trial, supported by the affidavits of defendant's counsel, who stated, "that this conference was going on when affiants first noticed it, and when it was too late to make objection, and that they did not in any way consent that said juryman should leave his co-jurors,. or have consultation with the judge."

We do not find that this precise question has been before our supreme court. Its strong tendency unquestionably has been not to interrupt the verdict for imputed misconduct on the part of a juror, unless it appeared, or could reasonably be inferred, that such conduct probably tended in some way to influence the verdict of the jury. *State v. Upton*, 20 Mo. 397 ; *State v. West*, 69 Mo. 401 ; *State v. Burton*, 74 Mo. 292 ; *State v. Clifton*, 73 Mo. 430 ; *State v. Hays*, 78 Mo. 307. But none of these cases presented or discussed the question involved in this case.

We take it to be the generally recognized rule of this country, as expressed by Parsons, C. J., in *Sargent v. Robards* (1 Pick. 337), that "no communication whatever ought to take place between the judge and the jury after the cause is committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of counsel in the cause. * * * It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it ; the only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case,

except in open court in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice; and the convenience of jurors is of small consideration compared with this great object. * * * It is better that everybody should suffer inconvenience than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy." So our supreme court, in *State v. Alexander* (66 Mo. 164), say: "The jury are the trier of the facts, and the court has no more right to interfere with them while considering of their verdict, except in open court, to discharge them from time to time, or in the presence of the accused and his counsel, to instruct them as to the law of the case, than the jury have to invade the province of the court."

This rule should certainly apply with force under our code of practice, where instructions to the jury *ore tenus* are dispensed with, and by positive statute are required to be given in open court in writing and before the argument of counsel to the jury is begun. It would unquestionably have been error had the trial judge, at any stage of the trial, instructed the jury orally as to any question of law arising in the cause.

In *Watertown Bank & Loan Company v. Mix et al.* (51 N. Y. 558), after the jury had retired to consider of their verdict, they sent to the judge a written inquiry as to whether a certain witness proved a specified fact. The judge, without the consent of counsel, sent to the jury room the answer of the short hand reporter to the effect "that no such question was asked." After which the jury returned into court their verdict. Upon this action of the court the learned judge, in the course of the opinion, observes: "If the judge at the trial had insisted in presence of counsel on giving to the jury a written answer to the question proposed and refused to communicate it to counsel, such a course would have been the

subject of an exception, as erroneous. The proposition involved in sustaining what took place at the trial is even more dangerous, for it must go the length of holding that the judge may make such communication to the jury in private, as he thinks right. There can be no other limit since the party has no means of knowing whether the judge has made any communication, nor what was its subject or terms, if any has been made. * * * It throws upon the party the burden of showing affirmatively that the judge did communicate to the jury, and that the communication tended to his injury. This burden is so great as in almost all instances to be equivalent to a denial of the party's right; and if it exists it materially diminishes the security of parties in the administration of justice."

It is urged by counsel in defence of the action of the court and juror that it does not affirmatively appear that they were talking about this case, nor that the jury were influenced in forming their verdict by reason of anything that transpired between the judge and foreman of the jury. We do not think this position, as applied to circumstances such as these, is tenable. In the first place the juror, in separating from the jury, without leave or consent, was guilty of misconduct, and the judge in communicating with him in private, or, what is the same, in whisper, was guilty of an impropriety calculated to excite suspicion and distrust on the part of the liti-gants, always hurtful to the orderly, dignified and just administration of law. Is not the presumption most reasonable and persuasive that the judge and juror were communicating touching some question dividing the jury? The juror came directly from the jury room, where the law presumes the jury were discussing the case in hand, and approaching the judge on the bench engaged him in conversation, so as to att· ct the attention of counsel. And thereafter the jurv came in to the court with a verdict (to say the least about it) of a peculiar character indicating a compromise.

Now what ought to be the correct and equitable rule in such a case? It is not possible for the losing party to state what the conversation was, for it was conducted privately. He cannot introduce the affidavit of the traverse juror to impeach his verdict; and he ought not to be required to demand of the judge a statement, with or without oath, impeaching the propriety of his action.

Hayne on New Trials (vol. 1, pp. 133-4) lays down the following rule: "That where the losing party shows that some private communication was made by the judge to the jury, it devolves upon the successful party to show what the communication was, and that unless he does this the verdict must be set aside; that where it clearly appears what the communication was, then if it be of such a character that it *may* have affected the jury, the verdict must be set aside; but that if the court can see from the record that it could not have had any effect, the verdict should stand."

We think the rule well stated by Gilfillan, C. J., in *Kochler v. Clearry* (23 Minn. 326): "The proper rule in such cases we deem to be that, if it does not appear that the misconduct was occasioned by the prevailing party, or any one in his behalf, and if it does not indicate any improper bias upon the jurors' minds, and the court cannot see that it either had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside. Citing *Pettibone v. Phelps*, 13 Conn. 445. In this case, the fact that the plaintiff could easily have explained what was done and said (if anything) at the time of the jurors' visit, and have shown their misconduct to have been harmless (if it was harmless) and that she makes no attempt at such explanation, requires that every reasonable inference which the facts will justify should be made against her. It would be unreasonable to require that the defendant should show that he was in fact prejudiced. He would not be permitted to show this by the oaths of the jurors. The

most that he could be called on to do is to show that the misconduct may have had an effect unfavorable to him."

In the case under consideration the plaintiff could have introduced the affidavit of the juror in support of the verdict. *State v. Underwood,* 57 Mo. 40–52. The judge himself, by his voluntary statement, might have removed all undue suspicion. Nothing of the sort was done by the plaintiff. This silence and non-action are most significant. Entertaining as we do the profoundest respect for the venerable and experienced judge who tried this case, and satisfied though we be of the purity of his motive, we nevertheless feel constrained, from a sense of the grave importance of preserving the most valuable right of trial by jury by securing the jury against all restraint or dictation from within and without, to say that he should have awarded a *venire de novo,* when his attention was called to the dissatisfaction of the losing party.

III. Complaint has been lodged before us, by affidavits on the part of defendant in error, that plaintiff in error has failed to comply with the rule of this court, in that he did not serve upon him copies of the abstract and brief herein twenty days before the day the cause was set down for hearing. We have fully considered this matter, although defendant in error has not filed any motion for affirmance or dismissal on account of this objection. The return of the sheriff of Platte county shows that he did serve the brief, to which the abstract is attached, on one of the counsel of defendant in error as early as last September. It is claimed, however, that this attorney so served is not now of counsel in the cause. The record shows that he was one of the original attorneys who brought the suit and tried it, and he appears on the docket of this court as the only attorney for defendant in error. If he had withdrawn from the case prior thereto, it was the duty of his client to have so advised opposite counsel; and while it is alleged that

counsel for plaintiff in error knew that the attorney so served was not in the case, the proof of this fact is not satisfactory. We think the plaintiff in error has shown proper diligence.

IV. This cause was originally brought to this court on appeal. The appeal was dismissed for appellant's failure to serve upon opposite counsel copy of abstract and brief, as requiried by the rules of court, whereupon defendant sued out his writ of error, on which the case is now here. Defendant in error makes the point that having taken his appeal the plaintiff in error is not entitled to have this writ of error. The law is otherwise. *Brill v. Meek*, 20 Mo. 358.

The other judges concurring, the judgment is reversed, and the cause remanded.