STATE of Missouri, Respondent,

v.

Randy W. COOPER, Appellant.

No. WD 32982.

Missouri Court of Appeals,
Western District.

Jan. 11, 1983.

As Modified March 1, 1983.

Vance C. Preman, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Defendant was jury convicted of leaving the scene of an accident, § 577.060,[1] RSMo 1978, resulting in a sentence by the court of two years, and under § 565.005 of manslaughter, sentence of five years, the sentences to run consecutively. Defendant does not question sufficiency of the evidence which showed him driving a motorcycle in a careless manner and at a high rate of speed in Swope Park, Kansas City, Missouri striking and killing a pedestrian. The defendant stopped to help the victim—then left the scene to allegedly go for help, but he never returned.

Defendant alleges two points on appeal, ineffective assistance of counsel at trial and separation of the jury following submission.

█ Defendant's point on ineffective assistance of counsel is denied. His bare allegations that trial counsel 1) did not challenge any of the jurors for cause; 2) only asked six questions of two persons on voir dire; 3) made no opening statement, and 4) that he presented no evidence nor offered instructions, all without any explanation and without any showing of prejudice to the defendant, preserve nothing for review. In any event, such allegations are not ordinarily reviewable on direct appeal and are best left to a Rule 27.26 proceeding where the issue can be more fully explored. *State v. Mitchell,* 620 S.W.2d 347, 348 (Mo. banc 1981). The record here on appeal is not sufficient for any meaningful review of the adequate assistance of counsel issue. *State v. Hobbs,* 612 S.W.2d 387, 388 (Mo.App. 1981).

With regard to the issue of separation, § 547.020(2) provides a court may grant a new trial "[w]hen the jury has been separated without leave of the court, after retiring to deliberate on their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case." Sections 546.230[2] and 546.240[3] detail the situations when a jury separation is allowed.

Following the submission of the case the court announced to the attorneys it had

---

**1.** All statutory references are to Revised Statutes of Missouri 1978 unless otherwise indicated.

**2.** Section 546.230 reads:
   With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases; and in misdemeanors the court may permit such separation of the jury of its own motion, but when the jurors are permitted to separate, after being impaneled as provided for in this chapter, and at each adjournment the court must admonish them that it is their duty not to converse among themselves, not to suffer others to converse with them or in their hearing on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them.

**3.** Section 546.240 reads, in part:
   When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict, and when they have agreed, he shall return them into court, or when ordered by the court.

received a note from the jury stating that they were aware of a unanimous vote being needed for a verdict but wanting to know whether a majority vote for the punishment was allowable. The judge then told the attorneys:

"However, there is something that has since come up within the last few minutes and that is that one of the jurors, Cynthia Perkins, came down the stairway from the jury room and indicated that she wanted to leave. But she was agreeable, according to the bailiff, to talk to me privately.

So she did come in and I talked to her privately and she did make reference to the question that the jury has sent down and I said I did propose to answer that and was there going to be any problem with her staying. And she said, well, she didn't want to go back there.

So I said, 'Well, I am going to have the jury called down,' and I wanted to talk to the jury as a group and I would be answering the question and had in mind to give them some information. So the gist of what she said was that, well, there wasn't any point in her staying around if it had to be unanimous in agreeing on a verdict.

I didn't specifically mention anything about giving her Instruction 4.50 whereby the punishment could be left up to the Court. But the Court does have in mind to give that instruction. Hopefully, if the Court does give that instruction to the jury, that she would go back and continue the deliberations with the jury."

The court advised the jury that pursuant to Instruction 4.50 the court could assess punishment. The jury then returned a verdict of guilty after which they were all polled. The court then apprised attorneys as follows:

THE COURT: I would like to state with reference to your motion, that since we made the record the last time when the jury was excused after giving them additional instruction, that Miss Perkins did not wish to go upstairs to the jury room. *I talked with her privately in my cham-*

*bers as to —briefly as to why she didn't want to go up there* and her only point was that, well, she wasn't going to be changing her mind about anything. *And so I urged her to just participate in on the —in on the discussion to see if any type of verdict could be arrived at* and she did then consent to meet with them here in the jury box in the courtroom so everyone else was excluded from the courtroom and the rest of the jury was brought down and so the twelve jurors did have their remaining discussion together in private here in the courtroom. [Emphasis added.]

The defendant's attorney moved for a mistrial because of juror separation, which was denied. His motion for new trial, which included the separation of juror Perkins was overruled, apparently without a hearing, with the court noting that "Although juror Cynthia Perkins was for a few minutes separated from the rest of the jurors during the period of deliberation, she was at all times during such period under the surveillance of the bailiff and the Judge and such separation was in no way prejudicial to the rights of the defendant."

It is clear from the above excerpts from the transcript that during the course of juror Perkins separation from the jury she had occasion to communicate with both the bailiff and Judge Smith privately and the judge urged her to rejoin her fellow jurors to see if they could reach a verdict. Thus in the instant case not only is there an issue of separation but there is also a question as to the propriety of the court's private communication with the juror.

▮ Missouri courts have long recognized the purpose of statutes governing juror separation is to prevent any opportunity for misconduct by the juror or any suspicions of improper influences upon them, *see e.g., State v. Daegele,* 302 S.W.2d 20, 25 (Mo.1957); *State v. Shawley,* 334 Mo. 352, 380, 67 S.W.2d 74, 88 (1933); *State v. Asbury,* 327 Mo. 180, 182, 36 S.W.2d 919, 920 (1931). Missouri case law recognizes that if juror separation or misconduct occur during the progress of the trial, but *before* submis-

sion, the verdict will be set aside as per § 547.020 "unless the state affirmatively shows that the jurors were not subject to improper influences." *State v. Edmondson,* 461 S.W.2d 713, 723 (Mo.1971).

"But if *after* the case has been submitted to the jury for its deliberation, and before a verdict has been reached, there is an *opportunity* that improper influence can be used on any juror that alone will require a new trial even though it be shown that improper influence was not exercised." *Edmondson, supra,* at 723–24 (emphasis added).[4]

Thus, no matter what may have actually been said to the juror, *the mere opportunity for improper influence* after the matter is submitted to the jury requires a new trial.

In *State v. Jones,* 363 Mo. 998, 1007, 255 S.W.2d 801, 806 (Mo.1953) the separation and communication occurred after the close of evidence while instructions were being prepared. *Jones,* involved a juror talking to the sheriff in the hall. The issue was preserved for defendant's motion for new trial, where, as here, no evidentiary hearing was held on the allegation of misconduct or improper communication. In quoting from *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921 (1892), the supreme court said in *Jones* as well as in *State v. Quinn,* 405 S.W.2d 895, 896 (Mo. 1966) "private communication, possibly prejudicial, between jurors and third persons or witnesses, or the officer in charge,

are absolutely forbidden and invalidate the verdict unless their harmlessness be made to appear." *Jones* stands for the proposition that the state must affirmatively show that jurors were not subjected to improper influence.

■ The state says that the facts here do not amount to a separation because the juror was at all times under the surveillance of the bailiff and the judge thus avoiding the triggering of the rationale of *Jones.* According to the state, if no separation occurs or the facts do not arise to the level of a meaningful separation there is case authority that the defendant need not be granted a new trial.[5] Also, the state relying on *State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74 (1933) asserts that defendant proved no prejudice because of the actions of juror Perkins, thus negating the need for a new trial under § 547.020(2). *Shawley* directly refutes the allegation of prejudice being needed *after* the jury retires. The statutes in force, during *Shawley* were the same as in this case, the court declaring a separation without leave of court after deliberation made mandatory the granting of a new trial, "regardless of whether actual prejudice to the defendant be shown." *Id.* 67 S.W.2d at 88.

■ With nothing more in the record than exists here, this court cannot say there was no opportunity for improper influence.[6]

---

4. *See also State v. Dodson,* 338 Mo. 846, 92 S.W.2d 614, 615 (Mo.1936) where the case was reversed there as the opportunity for contact existed where the sheriff after submission took the jurors to the train station where a large crowd had gathered. In *State v. Burkhart,* 615 S.W.2d 565, 568 (Mo.App.1981) this court held, relying on *Dodson,* that where a state's witness talked with a juror a new trial would be required as there was an opportunity for improper influence and actual improper influence need not be shown or exercised.

5. Such separations as for use of the elevator, for sleeping arrangements, and use of toilet facilities must not be viewed as separations. A "sensible" and "substantial" compliance must be considered sufficient to satisfy the statute. These cases also add the requirement that jurors must still be under the custody, control and supervision of the officers in

charge even though not under their ocular surveillance at all times. *State v. Bayless,* 362 Mo. 109, 240 S.W.2d 114 (Mo.1951); *State v. Daegele,* 302 Mo. 20, 25 (Mo.1957); *State v. Shawley,* 334 Mo. 352, 382, 67 S.W.2d 74, 89 (1933); *State v. Ferguson,* 133 S.W.2d 1023 (Mo.1939); *State v. Feltrop,* 343 S.W.2d 36 (Mo.App.1961). Only in *Bayless* were some of the separations (sleeping arrangements, transportation and purchase of cigarettes) after submission—all under the control of the court officials as determined by the record.

6. In *State v. Link,* 318 Mo. 1179, 3 S.W.2d 369, 371 (Mo.1928) the facts appear close to this case on the issue of separation where the jurors were accompanied back to the courtroom by the sheriff. It is not known whether as here the juror first left the jury room by herself, or did so with the officer. *Link,* makes no allegation of improper communication.

The comments of the judge make a prima facie case of juror separation and of a communication by an officer (bailiff) to a juror without order of the court (§ 546.240). Without an evidentiary hearing as to whether the opportunity for improper communications occurred, the state did not sufficiently meet its burden of proof to show that such opportunity *did not* occur. Thus, this juror separation alone would call for a mistrial. The private conversation between judge and a juror in chambers while jury deliberation was in progress was also prejudicial.

The state seems to presume that an opportunity for improper influence could exist only if the juror encountered and conversed with some party other than the judge or the bailiff, such as a witness, or some other third party. This presumption is contrary to Missouri precedent dating back to 1877. In *State v. Alexander,* 66 Mo. 148, 163–64 (1877), the trial judge held a conversation with one juror in private inquiring as to how likely the jury was to agree. The Missouri Supreme Court held:

There can be no question as to the impropriety of the conduct of the court . . . [I]t is unnecessary to cite authorities to prove a proposition which at once commends itself to our sense of justice and fairness. The jury are the triers of facts, and the court has no more right to interfere with them while considering of their verdict . . . than the jury have to invade the province of the court.

This court in an 1886 decision, *Chinn v. Davis,* 21 Mo.App. 363, 366–69 (1886) was faced with circumstances similar to the instant case and held:

"[N]o communication whatever ought to take place between the judge and the jury, after the case is committed to them by the charge of the judge, *unless in open court,* and, where practicable, in presence of counsel in the cause."

. . . "[W]here the losing party shows that some private communication was made by the judge to the jury, it devolves upon the successful party to show what the communication was, and that unless he

does this the verdict must be set aside; that where it clearly appears what the communication was, then if it be of such a character that it *may* have affected the jury, *the verdict must be set aside;* but that if the court can see from the record that it could not have had *any* effect, the verdict should stand." (Emphasis added).

It is clear in the present case that the judge's private conversation with the juror not only *may* have affected the jury but it did in fact affect the jury to the defendant's prejudice. But for the interference of the bailiff and the judge, the juror would have either left the courthouse, thus necessitating the immediate calling of a mistrial, or she would have refused to rejoin her fellow jurors, which would call for the same result. As is clear from the record this did not occur. The bailiff brought the separated juror in to see the judge and the judge proceeded to urge her to rejoin the other jurors in the deliberations to see if a verdict could be reached. The very fact that a lone juror was brought to chambers placed the judge on notice that a juror separation had occurred and that if the juror did not rejoin the other jurors a mistrial would have to be called. Any direct communication by the court with the juror at that point could be and here was prejudicial.

The reason for the communication with the juror is of little importance. In *Sullivan v. Union Electric Light and Power Co.,* 331 Mo. 1065, 56 S.W.2d 97, 103 (1932), the court stated that "[w]ith practical unanimity the courts have said that such communications between court and jury are improper *no matter how honest the purpose* of the judge." (Emphasis added.)

Thus, because it has long been the law in Missouri that communications between judges and individual jurors is to be avoided due to the potential for improper influence and because such communications occurred here, the judgment of the trial court is reversed and a new trial is ordered.