STATE of Missouri, Respondent,

v.

Thomas Wayne FRANKLIN, Appellant.

No. 53000.

Missouri Court of Appeals,
Eastern District,
Division One.

May 31, 1988.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., for respondent.

CRIST, Judge.

Defendant appeals his jury convictions on two counts of involuntary manslaughter, § 565.024, RSMo 1986, and one count of assault in the second degree, § 565.060, RSMo 1986. Defendant was sentenced to five years for each count of involuntary manslaughter and one year for assault

with the sentences to run consecutively, and was fined $2500 for the assault. We affirm.

Defendant does not question the sufficiency of the evidence to support the convictions. Viewed in the light most favorable to the verdict, the facts can be summarized as follows: On September 5, 1986, Tamara Franklin, defendant's wife, and two of their children picked up defendant from an Alcohol Rehabilitation Center in Vichy, Missouri, where he had been residing for approximately a month. When Mrs. Franklin arrived, defendant was smoking marijuana. His two-year-old son, Richard, was with him.

Mrs. Franklin drove the car, defendant rode in the passenger seat with Richard on his lap, and the two babies were strapped in the back seat. On the way home Mrs. Franklin twice stopped the car and defendant bought beer. After defendant had consumed several of the beers he began to fight with his wife. He began slapping her, poking her, and calling her names as she drove. Defendant asked her who she had been sleeping with while he was gone and threatened to kill her. At this time, Mrs. Franklin was driving east on Highway 70 towards St. Charles.

The argument continued for thirty minutes and culminated in defendant screaming at his wife, "You want to die now, bitch?" and grabbing the wheel of the car. At this point, the car crossed the median, made a sharp turn onto the westbound lane of Highway 70, collided with the rear of a pickup camper and collided head-on with the station wagon which carried decedents, Alan and Linda Block, and their son Corey, as well as three other children.

The Blocks were dead at the scene. Corey suffered a broken leg for which he wore a hip cast for approximately three months. Defendant was convicted of involuntary manslaughter in the deaths of Alan and Linda Block and assault in the injury of Corey Block.

There were also extensive injuries in the Franklin vehicle. Mrs. Franklin, while still trapped in the car, told a witness, "he pulled the wheel out of my hand." Defendant was able to walk from the car, al-

though he was disoriented and was later hospitalized.

In his own defense, defendant testified Mrs. Franklin's version of the accident was false and although he had had four or five beers prior to the accident, he was not intoxicated. He stated the car went out of control as Mrs. Franklin was trying to discipline their son, who was sitting in his lap. He denied causing the accident, stating he only attempted to grab the wheel to prevent an accident.

Defendant also introduced the testimony of two witnesses who visited Mrs. Franklin in the hospital. They stated she told them she believed defendant was dead and explained she had blamed the accident on defendant to keep herself out of jail. They also testified regarding Mrs. Franklin's reputation for untruthfulness. Defendant provided the additional information that his wife was originally issued two traffic citations which were later dropped after an investigation by the prosecutor's office.

Defendant's sole point on appeal deals with the trial court's failure to give the "hammer" instruction, MAI-CR3d 312.10, an instruction available at the court's discretion if a jury is in a deadlock situation. The case was submitted to the jury at 11:40 a.m. Five hours later, the trial judge elicited responses from the State and defense counsel on whether giving instruction 312.-10 to the jury at this time was appropriate. The State had no objection to 312.10, but defense counsel responded:

MR. GOLDENHERSH: On behalf of the defendant I believe that really the Court has outlined the procedure that I would suggest based on what the notes on the use of it is and that is to *first determine whether there is a deadlock* and then if the Court determines that there is a deadlock, then give the instruction. And I believe that's really what the Court is talking of doing anyway but so long as that is the procedure that is followed the defendant has no objection to that procedure. (emphasis added).

At 4:44 p.m., the trial judge summoned the jury back to the courtroom to question them regarding a deadlock. It is that questioning which defendant now complains of

as an "improper instructional substitute for MAI–CR3d 312.10."

THE COURT: Mrs. Blasingame, I am going to ask you some questions. It's important that you just answer the question that I ask and do not go beyond that with any further explanation unless I ask for it.

VENIREMAN BLASINGAME: Okay.

THE COURT: What I want to ask you now is, and at this point if you will just give me a yes or no answer I think that may be sufficient. If I have further question I will inquire but the jury has been out now for something over five hours. It is now approximately 4:46 p.m. Do you believe that the jury is making any progress at the present time toward arriving at a verdict?

VENIREMAN BLASINGAME: Yes.

THE COURT: Do you believe that given some additional time the jury can arrive at a verdict?

VENIREMAN BLASINGAME: Yes.

THE COURT: Do you believe you can do that without any further assistance or instructions from the Court?

VENIREMAN BLASINGAME: No, I think we can use some assistance. We have a question on a couple of things.

THE COURT: If you have any specific questions you will have to write them out. However, counsel, will you approach the bench?

At this point, the trial judge proposed to give instruction 312.10 because the jury was close to being deadlocked; however, counsel for defendant objected on the ground there was no deadlock at this point. Thereafter the judge conceded, telling the jury the following:

THE COURT: Mrs. Blasingame, *I think the appropriate thing to do at this time would be to tell you that you should return with the jury to the jury room.* If you do have some further question you might write that out. However, I may or may not be able to give you any further instruction in connection with any specific question that you may have. As you know, the laws are rather particular with reference to these instructions. That's why we take the time we took to prepare the instructions which were given to you and so we may or may not be able to answer any specific questions you have but we will deal with that when we see what you have. But I would prefer rather than to have you try to state that now, I would prefer you to go back into the jury room with the jury and write out any question that you might have. If you still have a question now regardless of what has taken place here or anything I have said now, you have all of the instructions given. You should be guided by those instructions. *You should continue with your deliberations just as you have before and you are, of course, not to feel that you are committed in any way with respect to those instructions or the verdicts but simply proceed with your deliberations.* Very well. Take those back with you to the jury room. You may retire to the jury room at this time. (emphasis added).

 Because of defendant's objection, the hammer instruction was not given. Defendant's refusal of this instruction constitutes a binding waiver. *State v. Howard,* 615 S.W.2d 498, 500[7] (Mo.App.1981). Such a response has been called "self-invited error." *State v. Coleman,* 660 S.W.2d 201, 209 (Mo.App.1983); *Howard,* 615 S.W. 2d at 500[7].

 In any event, the trial judge's comments were not an improper oral instruction to the jury as defendant asserts. Defendant cites the cases of *State v. Steward,* 734 S.W.2d 821 (Mo. banc 1987) and *State v. Hayes,* 563 S.W.2d 11 (Mo. banc 1978), in support of his proposition. However, we find the judge's remarks were merely designed to determine whether the jury could reach a verdict and were not used as a substitute for the hammer instruction. *See State v. Harvey,* 641 S.W.2d 792, 799[3] (Mo.App.1982).

Judgment affirmed.

GARY M. GAERTNER, P.J., and REINHARD, J., concur.